IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

BERARDO A. QUILEZ-VELAR,
ET AL.,

Plaintiffs,

v.

OX BODIES, INC., ET AL.,

Defendants.

CIV. NO.: 12-1780(SCC)

## OPINION AND ORDER

Before the Court is a purported motion for summary judgment[1] filed by Defendants Ox Bodies, Inc., and Truck

---

**1.** Defendants previously filed a motion for judgment on the pleadings, *see* Docket No. 197, which the Court denied without prejudice, instructing Defendants to proceed by motion for summary judgment, Docket No. 218. In response, Defendants filed the current motion, but its factual allegations are drawn entirely from the pleadings. *See* Docket No. 272. At Plaintiffs' prompting, Defendants now agree that the proper standard for consideration of the motion is the standard for judgment on the pleadings. *See* Docket No. 293-1, at 2. We therefore GRANT Defendants' motion to convert their motion into one for

Bodies & Equipment International, Inc. The motion focuses principally on the scope of the crashworthiness doctrine under Puerto Rico law. After reviewing the parties' papers, we deny the motion for the reasons stated below.

### I.   Factual Background

On the morning of October 1, 2010, Maribel Quilez-Bonelli was driving her 2004 Jeep Liberty in the left lane of Expreso Román Baldorioty de Castro. Quilez was traveling west, in the direction of San Juan from Carolina, at about kilometer 4.0, near the Norte Shopping Center, at which point the highway is elevated. As she was descending the elevation, Quilez impacted a 2003 International Truck 4300, which was stopped or nearly stopped in the left lane while municipal employees did maintenance work in the area. Quilez apparently realized at the last minute that the truck was not moving and she swerved to the right; nonetheless, the driver's side of her Jeep impacted the Truck. The hood of Quilez's jeep underrode the Truck, and the Truck's bumper penetrated the Jeep's driver's side roof and windshield. The impact struck Quilez in her face and head, killing her.

---

judgment on the pleadings.

The Truck's cab and chassis were designed and manufactured by Third-Party Defendant Navistar, Inc. The Truck's dump body was designed and manufactured by Defendant Ox Bodies, Inc.; the design and manufacture of the dump body included the design and manufacture of the Truck's rear underride guard. Plaintiffs, all relatives of Quilez, sue Defendants Ox Bodies and Truck Bodies for failing to properly design or manufacture the Truck's rear guard.

## II.  Analysis

### A.  Strict Liability

In 1968, the Eighth Circuit, applying Minnesota law, held that automobile manufacturers had a strict liability duty to design their products to be safe in the event of foreseeable accidents, including collisions, even where the defect was not the cause of the accident. *Larsen v. Gen. Motors Corp.*, 391 F.2d 495, 502 (8th Cir. 1968).[2] While *Larsen* recognized that "an

---

2. *Larsen* concerned injuries to the plaintiff-driver who was involved in a head-on collision, the force of which caused the steering mechanism to thrust into his head. *See Larsen v. Gen. Motors Corp.*, 391 F.2d 495, 496–97 (8th Cir. 1968). The alleged defect did not cause the accident; instead, the so-called "secondary collision" of the plaintiff with the inside of the vehicle aggravated injuries that he would have suffered otherwise. *Id.* at 497.

automobile manufacturer is under no duty to design an accident-proof or fool-proof vehicle," it held that a manufacture *is* "under a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision." *Id.* After all, regardless of a driver's fault, collisions "are clearly foreseeable by the manufacturer and are statistically inevitable." *Id.*; *see also id.* at 502 n.4 (citing contemporary accident figures). *Larsen* turned out to be a seminal case, and in its aftermath, the doctrine that it birthed—referred to as "crashworthiness"—became the norm across the United States. *See* 2 MADDEN & OWEN ON PRODUCTS LIABILITY § 21:3 (3d ed.) (discussing the doctrine of crashworthiness).

Defendants suggest, however, that the crashworthiness doctrine may not exist under Puerto Rico law. *See* Docket No. 272, at 6 & n.2; *see also* Docket No. 293-1, at 3–4. It is true that the Puerto Rico Supreme Court has never explicitly adopted *Larsen*. It has, however, "consistently relied upon California Supreme Court precedent" in deciding strict products liability cases. *Collazo-Santiago v. Toyota Motor Corp.*, 149 F.3d 23, 25 (1st Cir. 1998) (citing *Montero-Saldaña v. Am. Motors Corp.*, 107 D.P.R. 452, 7 P.R. Offic. Trans. 501 (1978)); *see also Vazquez-*

*Fileppetti v. Banco Popular de P.R.*, 504 F.3d 43, 52 (1st Cir. 2007)
("Puerto Rico has generally followed the example set by
California for defective product design claims . . . ."). And
California has unambiguously followed *Larsen*. *See, e.g.*, *Horn
v. Gen. Motors Corp.*, 17 Cal. 3d 359, 366 (1976). Indeed, *every*
American jurisdiction follows *Larsen*. 2 MADDEN & OWEN ON
PRODUCTS LIABILITY § 21:3 ("[I]t seems safe to say that the
crashworthiness doctrine is now the law in every American
jurisdiction."); RESTATEMENT (THIRD) OF TORTS: PROD. LIAB.
§ 16, cmt. a ("The *Larsen* rule appears now to be the unanimous
position of American courts. . . . The Reporters are unaware of
any jurisdiction that espouses [a contrary rule].").[3] Accord-
ingly, we conclude that the crashworthiness doctrine does exist
under Puerto Rico law.

That said, this case does not precisely fit the *Larsen* para-
digm. In *Larsen*, the plaintiff was injured by a defect in the

---

**3.** *Larsen* responded in large part to the Seventh Circuit's decision in *Evans
v. General Motors Corp.*, which held that under Indiana law, automobile
manufacturers had no duty to design their automobiles to protect
against foreseeable collisions. 359 F.2d 822, 825 (7th Cir. 1966). Within
a decade of *Larsen*, the Seventh Circuit reversed itself and held that the
crashworthiness doctrine did exist under Indiana law. *Huff v. White
Motor Corp.*, 565 F.2d 104, 109–10 (7th Cir. 1977).

vehicle in which he was riding. Here, by contrast, Quilez was killed by an alleged defect in the Truck into which she crashed. According to Defendants, this difference is dispositive. Relying on *Rennert v. Great Dane Ltd.*, Defendants argue that Puerto Rico would not recognize a duty of a manufacturer to design its automobiles so as to protect those who crash into them. *See* 543 F.3d 914, 916 (7th Cir. 2008) (noting that the Illinois Supreme Court had held that a "manufacturer does not owe a duty to protect those who collide with its vehicle" (citing *Mieher v. Brown*, 54 Ill. 2d 539 (1973))). *Rennert* noted that at least nine states had adopted a contrary rule but that it was bound by clear precedent from the Illinois Supreme Court. *See id.* ("It is Rennert's bad luck that Illinois is not among the states—by at least one count, nine—that have recognized a cause of action in a case such as this.").

According to Defendants, *Rennert* states the majority rule, as it stands for the proposition that "only *nine states* out of *fifty* have embraced the position championed by Plaintiffs." Docket No. 272, at 8. Defendants misapprehend the case law. It is certainly true that less than a majority of the states have explicitly acknowledged causes of action of this type, but that seems to be a product of the small number of courts that have

considered the question. As Defendants emphasize, the
Seventh Circuit counted at least nine states that would
acknowledge Plaintiffs' cause of action, *see Rennert*, 543 F.3d at
916, and our own count reveals twelve, *see, e.g.*, *Harris v. Great
Dane Trailers, Inc.*, 234 F.3d 398 (8th Cir. 2000) (Arkansas law);
*Buzzard v. Roadrunner Trucking, Inc.*, 966 F.2d 777 (3d Cir. 1992)
(Pennsylvania law); *Karney v. Leonard Transp. Corp.*, 561 F.
Supp. 2d 260 (D. Conn. 2008); *Rivers v. Great Dane Trailers, Inc.*,
816 F. Supp. 1525 (M.D. Ala. 1993) (Florida law); *Boyle v. Ford
Motor Co.*, 942 A.2d 850 (N.J. App. Div. 2008); *Great Dane
Trailers, Inc. v. Wells*, 52 S.W.3d 737 (Tex. 2001); *Quay v.
Crawford*, 788 So.2d 76 (Miss. Ct. App. 2001); *Hagan v. Gemstate
Mfg., Inc.*, 982 P.2d 1108 (Or. 1999); *Worldwide Equip., Inc. v.
Mullins*, 11 S.W.3d 50 (Ky. Ct. App. 1999); *Detillier v. Sullivan*,
714 So.2d 244 (La. Ct. App. 1998); *Poorman v. Kidron, Inc.*, No.
17573, 1996 WL 515547 (Ohio Ct. App. Sept. 11, 1996)
(unpublished); *Garcia v. Rivera*, 160 A.D.2d 274 (N.Y. App. Div.
1990).[4] What Defendants don't do is point to any cases that

---

**4.**   Several of these cases do not expressly decide the issue now before us.
Instead, they seem to take the validity of such a claim for granted. For
example, in *Boyle*, the court held that the plaintiff, injured due to an
underride accident, could not sue the chassis-cab manufacturer because
the chassis cab was, in essence, a component part. *See Boyle v. Ford*

have followed *Rennert* or *Mieher*, and our own search reveals not a single post-*Larsen* case from outside of Illinois applying the *Rennert/Miehler* rule. Thus, contrary to Defendants' strident position,[5] their rule is disfavored, and Plaintiffs' position constitutes the majority rule, at least so far as one can be determined.

---

*Motor Co.*, 942 A.2d 850, 862 (N.J. App. Div. 2008) (holding that the "safety device could not have been pre-installed by [the chassis-cab manufacturer] because, depending on the vehicle's end-use, such a device could have been ineffective, inadequate, or unnecessary"). The court expressed no qualms about liability falling on the final stage manufacturer, however. *See id.* at 852 n.1, 862 (noting that the final stage manufacturer, which had settled, was "in the best position to ascertain the safety needs of the modified" chassis cab). As we explain below, claims such as Plaintiffs' flow naturally from the principles expressed in *Larsen*; thus, we are unsurprised that most courts to have passed upon the question have simply assumed such claims' validity without comment.

5.   Plaintiffs point out that *Rennert* cites no cases from outside of Illinois supporting its rule, though it cites to at least nine cases from outside of Illinois that contradict it. *See* Docket No. 280, at 10–11. Plaintiffs understand this to be an acknowledgment by the Seventh Circuit that Illinois's rule was in the minority. *See id.* ("The Seventh Circuit acknowledged that the Illinois rule constitutes the minority view . . . ."). Defendants call this a "strained" "misrepresentation" of *Rennert*, and they point out that "only nine states recognize a cause of action similar to what Plaintiffs[] advance in this case." Docket No. 293-1, at 5. But that is eight more states than Defendants can adduce in support of their position.

That twelve of the thirteen jurisdictions to have considered the question have favored Plaintiffs' rule is itself persuasive evidence of the course that the Puerto Rico Supreme Court would take. More persuasive is the fact that Plaintiffs' position is stronger on the merits. It is true that in some places *Larsen* refers to manufacturers' duty to protect against reasonably foreseeable harms to "users" of their products. *See, e.g., Larsen*, 391 F.2d at 502 (holding that a manufacturer "is under a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable injury in the event of a collision"). These statements, however, are based on a broader principle: that manufacturers must be "held to a reasonable duty of care in the design of [their] vehicle[s] consonant with the state of the art to minimize the effect of accidents." *Id.* at 503. Thus, because "the intended use of an automotive product contemplates its travel on crowded and high speed roads and highways that inevitably subject it to the foreseeable hazards of collisions and impacts," a manufacturer has a duty to design its products so as to "minimize or lessen the injurious effects of a collision." *Id.* at 503–04.

*Mieher* relied on *Larsen*, but it distinguished it based on a restrictive understanding of foreseeability. *Mieher*'s facts

describe a typical underride case: the plaintiff's car struck a large truck, and she was killed when her vehicle "proceed[ed] unimpeded under the bed of the truck" because of an alleged defect in the truck's rear bumper design. *See Mieher*, 54 Ill. 2d at 540–41. The *Mieher* court seems to have found these facts remarkable, however. *See id.* at 544 ("We do not believe, however, that the foreseeability rule applied in *Larsen* is intended to bring within the ambit fo the defendant's duty every consequence which might possibly occur."). Indeed, the court called the accident an "extraordinary occurrence." *Id.* at 545. This seems to have been the basis for the court distinguishing its case—about "the duty of the manufacturer to design a vehicle with which it is safe to collide"—with *Larsen*, which it said was about "the duty of the manufacturer to design a vehicle in which it was safe to ride." *Id.* at 543.

As decisions relying on *Mieher* have acknowledged, however, *Mieher* was flatly wrong about the "extraordinary" nature of the accident in that case; rear-end collisions are common, and when they involve large trucks, they can be extremely dangerous. *See Beattie v. Lindelof*, 262 Ill. App. 3d 372, 379 n. 2 (Ill. Ct. App. 1994) (noting that "rear-end collisions are common"); *see also* 64 Fed. Reg. 2004, 2004 (Jan. 24, 1996)

(estimating "that about 11,551 rear-end crashes with trucks, trailers, and semitrailers occur annually," resulting in "approximately 423 passenger vehicle occupant fatalities and about 5,030 non-fatal injuries"). Thus, no serious argument can be made that the accident in *Mieher*—much less here—was an "extraordinary occurrence." To the contrary, the danger of underride accidents is well known to truck manufacturers and has been for decades.

Thus, foreseeability concerns do not support *Mieher*'s decision to draw a distinction between injuries to occupants of defective vehicles and injuries to occupants of other vehicles. And, frankly, we see no other justification for such a limitation in either *Mieher* or *Beattie*, on which *Rennert* also relies.[6] The better rule—and the one favored by the Restatement—holds that the manufacturer has a duty that is coextensive with the foreseeability of the harm. *See* RESTATEMENT (THIRD) OF TORTS:

---

**6.** We find it useful to note here that *Mieher* was a negligence case, and it did not involve any strict liability claims. *See Mieher*, 54 Ill. 2d at 541. Nonetheless, *Beattie* extended its applicability into the strict liability realm. *Beattie*, 262 Ill. App. 2d at 383 (reasoning that the "[a]lthough the court in *Mieher* did not address" the strict liability issue, it "would have reached the same conclusion for strict liability claims as it did with negligence claims").

PROD. LIAB. § 16, cmt. a ("A manufacturer has a duty to design and manufacture its product so as reasonably to reduce the foreseeable harm that may occur in an accident brought about by causes other than a product defect."); *see also, e.g.*, *Jurado v. Western Gear Works*, 619 A.2d 1312, 1318 (N.J. 1993) ("A manufacturer . . . has a duty to prevent injury caused by the foreseeable misuse of his product."); *Bean v. BIC Corp.*, 597 So. 2d 1350, 1352 (Ala. 1992) ("The scope of a manufacturer's legal duty, therefore, depends upon two factors: (1) the foreseeability of the danger; and (2) the feasibility of an alternative design that averts that danger."); *Ellsworth v. Sherne Lingerie, Inc.*, 495 A.2d 348, 355 (Md. 1985) (holding that "a seller is required to provide a product that is not unreasonably dangerous when used for a purpose and in a manner that is reasonably foreseeable"). Given that the foreseeability of this type of accident is indisputable, in the language of *Larsen*, "[w]e perceive of no sound reason, either in logic or experience, nor any command in precedent, why the manufacturer should not be held to a reasonable duty of care in the design of" its rear bumpers so as to "minimize the effects of accidents" to those who collide with its vehicles. *Larsen*, 391 F.2d at 503. The motion for summary judgment is accordingly denied as to

the strict products liability claim.[7]

## B. Negligence

Plaintiffs also press a negligent design claim under Article 1802 of the Puerto Rico civil code. Defendants oppose this claim for much the same reasons as they do Plaintiffs' strict liability claims, and the strongest case in their favor is *Rivers v. Great Dane Trailers*. In *Rivers*, which was also an underride collision case, the court allowed the plaintiff's strict liability claims for reasons similar to ours above. *See Rivers*, 816 F. Supp. at 1531–32. However, the court granted summary judgment in favor of the defendants as to the plaintiffs negligence claims. In doing so, the court relied on *Mieher* and two other cases that had found no duty on the part of manufactur-

---

**7.** *Larsen* made clear that it was not making special rules for automobile manufacturers; to the contrary, it applied long-standing principles "equally applicable to all manufacturers." *Larsen*, 391 F.2d at 504. It is worth noting, therefore, that bystanders "are widely recognized as protected by" products liability law. Mary J. Davis, *Design Defect Liability: In Search of a Standard of Responsibility*, 39 WAYNE L. REV. 1217, 1236 (1993) (citing *Elmore v. Am. Motors Corp.*, 451 P.2d 84, 88 (Cal. 1969) (holding that "the doctrine may not be limited on the theory that no representation of safety is made to the bystander" because "a bystander is often a perfectly foreseeable risk of the maker's enterprise" (internal quotation omitted))). Given that fact, it is unremarkable to extend that protection to occupants of vehicles that crash into a defective vehicle.

ers to make their vehicles safe for third parties to strike from the outside. *See id.* at 1529; *see also Kahn v. Chrysler Corp.*, 221 F. Supp. 677 (S.D. Tex. 1963) (concerning a child injured by riding his bike into a parked car); *Hatch v. Ford Motor Co.*, 329 P.2d 605 (Cal. App. 1958) (same). *Rivers* provides no further analysis in support of its holding that Florida law would not recognize a duty to third parties.

We do not believe that the Puerto Rico Supreme Court would follow *Rivers*. First, of course, we disagree with its reliance on *Mieher* for the reasons stated in the previous section: that case did not well explain its decision to draw an arbitrary line between those inside and outside of the manufacturer's vehicle despite the fact that certain types accidents concerning both groups are reasonably foreseeable. Second, neither *Hatch* nor *Kahn* are persuasive authorities in an underride case. Crucially, "[b]oth *Hatch* and *Kahn* were decided before their respective jurisdictions adopted the *Larsen* rule," and so each has been superceded doctrinally. *Knippen v. Ford Motor Co.*, 546 F.2d 993, 1001 (D.C. Cir. 1976); *see also Jones v. NordicTrack, Inc.*, 236 F.3d 658, 660–61 (11th Cir. 2000) (noting that *Hatch* "has since been called into doubt in California"). Moreover, both *Hatch* and *Kahn* describe a fairly peculiar

factual scenario concerning children injuring themselves after striking stopped, legally parked automobiles. In that sense, the cases are factually distinguishable, as they present far less foreseeable accidents than do underride cases.

A plaintiff making a negligence claim under Puerto Rico law is obliged to prove, among other things, a breach of duty on the part of the defendant. *See, e.g., Sociedad de Gananciales v. Gonzalez Padin*, 17 P.R. Offic. Trans. 111, 125 (1986). Typically, the duty is one of due care: "the general rule that one must act as would a prudent and reasonable person under the circumstances." *Vazquez-Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007) (citing *Ortíz v. Levitt & Sons of P.R., Inc.*, 1 P.R. Offic. Trans. 407 (1973)). This duty is breached when a person's actions "create reasonably foreseeable risks." *Id.* Thus, "in a negligence action, foreseeability provides the linchpin" for "determining the duty of an actor." *Malave-Felix v. Volvo Car Corp.*, 946 F.2d 967, 972 (1st Cir. 1991); *see also Woods-Leber v. Hyatt Hotels of P.R., Inc.*, 951 F. Supp. 1028, 1036 (D.P.R. 1996) ("The duty of care may therefore be defined as an obligation to anticipate and take measures against a danger that is reasonably foreseeable." (citing *Pabón-Escabí v. Axtmayer*, 90 D.P.R. 20, 25 (1964))), *aff'd*, 124 F.3d 47 (1st Cir. 1997); *Elba A.B.M. v.*

*Universidad de P.R.*, 125 D.P.R. 294, 309 (1990) ("The duty to
exercise due care comprises the obligations to foresee and to
prevent the occurrence of damages which may reasonably be
foreseen.").[8] In negligent design cases, Puerto Rico law also
requires the plaintiff to establish—usually by expert testi-
mony—the relevant standard of care owed by the manufac-
turer, as well as the ways in which the manufacturer breached
that standard. *See Vazquez-Fileppetti*, 504 F.3d at 54.[9]

---

**8.** For an official English-language translation of *Elba*, from which this
quote is drawn, *see Elba A.B.M v. Univ. of P.R.*, No. RE-86-214, 1990 WL
658047 (P.R. 1990).

**9.** We do not understand Puerto Rico law to establish any special burden
for negligent design plaintiffs. *Vazquez-Filippetti* relied primarily on a
series of cases from this Court concerning the negligent design of
cigarettes. *See Vazquez-Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 53
(1st Cir. 2007) (citing cases). The first of those cases—and the one on
which the others relied—cited only to the elements of a negligence
action in a typical tort case. *See Cruz-Vargas v. R.J. Reynolds Tobacco Co.*,
218 F. Supp. 2d 109, 119 (D.P.R. 2002); *see also Tokio Marine & Fire Ins.
Co. v. Grove Mfg. Co.*, 958 F.2d 1169, 1171 (1st Cir. 1992) (providing the
standard for negligence used by *Cruz-Vargas*). Instead, we understand
a design negligence plaintiff's burden to mirror that of a plaintiff in any
other professional negligence suit, where expert evidence is typically
necessary to define the standard of care and its breach. *Compare Colon
Prieto v. Geigel*, 15 P.R. Offic. Trans. 313, 321 (1984) (discussing
professional negligence), *with Vazquez-Fileppetti*, 504 F.3d at 52
(explaining that expert testimony is necessary in negligent design cases
because "the design of the relevant product is beyond the experience or

Given this legal background, and given the foreseeability of underride accidents, we cannot decide, as a matter of law, that negligent design cases of this sort are barred by Puerto Rico law. Further, because Defendants' motion is effectively one to dismiss, not for summary judgment, we will not inquire into whether Plaintiffs can prove the standard of care, something that they must do by expert evidence.[10] Accordingly, we deny the motion for summary judgment as to the negligent design claim.

## III.    Conclusion

---

knowledge of an average lay person").

**10.** In its motion, Defendants spend some time arguing that a federal regulation providing standards for rear impact guards on certain large trucks, *see* 49 C.F.R. § 393.86, does not apply to them. We agree with Defendants to an extent: the regulation applies only to motor carriers, *see* 49 C.F.R. § 393.1(b)(1), a category that does not include Defendants. *See, e.g.*, *Mottu v. Navistar Int'l Transp. Corp.*, 804 S.W.2d 144, 147 (Tex. App. 1990) (holding that § 393.86 does not apply to manufacturers). That said, it is not apparent what relief Defendants are requesting in making these arguments. As best we can tell, their motion reads like a motion in limine seeking to exclude § 393.86 as evidence at trial. If that's the case, the motion is premature. *But see Hagan v. Gemstate Mfg., Inc.*, 982 P.2d 1108, 1117 (Or. 1999) (holding that § 393.86 may be used as evidence against a manufacturer at trial in establishing the standard fo care). We reserve the matter of § 393.86's admissibility for a later time.

For all of the reasons state above, Defendants' motion for judgment on the pleadings, Docket No. 272,  is DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 16th day of May, 2014.

<u>S/ SILVIA CARREÑO-COLL</u>

UNITED STATES MAGISTRATE JUDGE