IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

BERARDO A. QUILEZ-VELAR,
ET AL.,

Plaintiffs,

v.

OX BODIES, INC., ET AL.,

Defendants.

CIV. NO.: 12-1780(SCC)

## MEMORANDUM AND ORDER

Before the court are several motions in limine filed by the parties in advance of the trial in this case. I take them up individually below.

### I.  Plaintiffs' Motions

### A.  Motion to Exclude Dr. Alfred P. Bowles (Docket No. 417)

Defendants intend to call Dr. Alfred Bowles as an expert on how traumatic injuries occur as a result of physical exposure to various forces. Plaintiffs seek to exclude Dr. Bowles because,

they say, his report shows he plans to testify on subjects on which he has no expertise, such as the "adequacy of rear underride guards." Docket No. 417, at 8. Plaintiffs' concerns are misplaced. For example, Plaintiffs complain about a statement in Dr. Bowles's report where he states that the alternative designs proposed by other experts lack "confirmatory impact tests" that would show that they would not have injured the decedent. Docket No. 417-1, at 5. But Dr. Bowles is an expert in biomechanics and impact trauma, and he is surely qualified to say that no tests have been performed, and he may propound on the significance of that lack of tests. Likewise, Plaintiffs complain about Dr. Bowles's intent to testify that "the proposed alternative rear guard designs would not eliminate the potential mechanism for fatal head injury in an alternative comparative crash." *Id.* Dr. Bowles is certainly qualified to testify about the biomechanical import of various rear guard designs. Finally, while Dr. Bowles is not qualified to discuss traffic control measures,[1] he may certainly testify about the

---

1. Meaning that he should not testify about what traffic control configurations would have been "better," *see, e.g.*, Docket No. 417-1, at 5, though he may testify about the how the biomechanics of the impact would have been different in alternative crash scenarios.

biomechanical effects of collisions with, *e.g.*, truck-mounted attenuators.

As I read the report, Dr. Bowles does not intend to testify about what various rear guard's would have done to the decedent's vehicle. Rather, his testimony takes the results of other experts' testimony and extends it by showing what effect various surmised and hypothetical impacts would have had on the decedent's body. This seems well within his expertise and is plainly useful to the jury. For that reason, I am unpersuaded about Plaintiffs' complaints that Dr. Bowles relies on other experts' statements. This is because in doing so, he is not parroting their results, he is applying his own expertise to their results, in order to better inform the jury. Docket No. 417 is accordingly DENIED.

### B.  Motion to Exclude Police Report (Docket No. 418)

Plaintiffs move to exclude an investigative report of the accident, which was written by POPR Agent Anibal Vélez-Cruz. Plaintiffs object specfically to a portion of the report in which Agent Vélez concludes that at the time of the accident, the decedent's car was moving "at such a speed that it did not allow control over the vehicle itself." Docket No. 418-2, at 3. According to Plaintiffs, this is problematic because Agent

Vélez's assessment was based on "unfounded opinion based on hearsay." Docket No. 418, at 5. Accordingly, say Plaintiffs, the report should be excluded.

The question is whether Agent Vélez's report complies with Federal Rule of Evidence 803(8)(B)'s trustworthiness requirement. Plaintiffs argue that it does not, because the "report contains no physical data or evidence to support" Vélez's conclusions about speed, which must therefore have been based on witness statements. Docket No. 418, at 6 (citing *Faries v. Atlas Truck Body Mfg. Co.*, 797 F.2d 619, 622 (8th Cir. 1986)). Trustworthiness, in the context of Rule 803(8), "refers to matters such as whether the evidence is self-authenticating or contemporaneously compiled by a person of adequate skill and experience." *Blake v. Pellegrino*, 329 F.3d 43, 48 (1st Cir. 2003). To this end, I may consider "the sources of information utilized." *Id.* But it cannot be argued that there is a bar against admitting a report that is based on hearsay, as long as the report has indicia of trustworthiness. *See, e.g.*, *Remington Inv., Inc. v. Quintero & Martinez Co., Inc.*, 961 F. Supp. 344, 352 ("The First Circuit has flatly rejected the argument that official firsthand knowledge is required." (citing *Robbins v. Whelan*, 653 F.2d 47 (1st Cir. 1991)).

Here, the report deserves an "initial presumption of admissibility." *Lubanski v. Coleco Indus., Inc.*, 929 F.2d 42, 45–46 (1st Cir. 1991). Nonetheless, it should be excluded. Nothing in the report—which is brief and preliminary, *see* Docket No. 418-2, at 3 (noting that the "case is pending for investigation)—describes the origin of Agent Vélez's conclusions. He did not witness the accident, and it seems he performed no measurements or tests, so his conclusions are likely not conclusions at all, but, rather, the parroting of witnesses' unverifiable hearsay opinions. Because these opinions form the entire basis for Vélez's conclusions, and because the report is so conclusory that Plaintiffs could have no opportunity to undermine it on its own terms, I would strike the report on trustworthiness grounds.[2] Accordingly, I GRANT Plaintiffs' motion and exclude the police report.[3]

---

**2.** I note, moreover, that the problem of introducing this hearsay through the police report is amplified by the fact that the conclusions Agent Vélez adopts in the report are extremely prejudicial to Plaintiffs. Evidence that the decedent was speeding and lost control of her vehicle is more fairly presented by direct evidence.

**3.** Alternatively, the report may be omitted with the offending passage redacted.

### C.  Motion to Exclude Anand Kasbekar and Brian Halpin (Docket No. 419).

Plaintiffs seek to exclude the testimony of Anand Kasbekar and Brian Halpin, primarily because "neither one rendered any report." Docket No. 419, at 4. As to Kaskebar, this matter is moot because Plaintiffs have no plan to call him as a witness in this case. Docket No. 439, at 1.

As to Halpin, it appears that contrary to Plaintiffs' contention, he *did* submit an expert report almost a year ago, on April 11, 2014. *See* Docket No. 439-3; *see also* Docket No. 439-1, at 5 (email sending report to Plaintiffs' counsel). It is plain, then, that Plaintiffs' motion is improper, and it is DENIED.[4] What needs to be explained, though, is why Plaintiffs have made the patently false claim that Halpin's report was not provided, when it clearly was. To that end, before the start of trial Plaintiffs must SHOW CAUSE why sanctions should not be imposed against them and/or their counsel for making false

---

**4.** That said, the email by which Plaintiffs' counsel was sent Halpin's report does not appear to also contain his CV and other information required to be disclosed under the rules. It is unclear when or if that material was disclosed. However, even if had not been, I would be disinclined to strike Halpin's testimony for that reason alone.

representations to this Court.[5]

### D. Motion to Exclude Whitney G. Morgan (Docket No. 420)

Defendants intend to call Whitney Morgan as an expert in commercial motor vehicle compliance, enforcement, and safety. Morgan will testify that the rear guard in this case complied with certain federal regulations. According to Plaintiffs, this testimony must be excluded because the "proper standard of care in this case is a matter for the Jury to decide," and "[c]ompliance with regulations does not preclude the jury from finding that defendants breached their duty." Docket No. 420, at 9. Plaintiffs' position is wholly frivolous. Of course, it is for the jury to decide what the applicable standard of care is in this case. As Plaintiffs' counsel surely knows, the jury is assisted in that endeavor by expert witnesses, who testify as to

---

**5.** I suspect that Plaintiffs might attempt to defend themselves by claiming that the report was filed untimely. The Court will not accept such an excuse, however, because Plaintiffs' motion was obviously meant to create the impression that the report was *never* filed. *See, e.g.*, Docket No. 419, at 6 (referring to "defendants' *absolute failure*" to provide Halpin's report (emphasis added)); *see also id.* (arguing that the prejudice of Defendants' failure was "palpable and irreversible" because Plaintiffs were "*completely deprived*" of the ability to counter Halpin's report (emphasis added)).

what, in their opinions, the proper standard is. *See, e.g.*, *Vazquez-Filipetti v. Banco Popular de P.R.*, 504 F.3d 43, 54 (1st Cir. 2007) (explaining that in a defective design case, the use of an expert witness is typically necessary to present evidence "as to the relevant standard of care for the design"). And plainly, Morgan will testify that the regulation at issue is the proper standard of care in this case. *See* Docket No. 420-1, at 3 ("The [regulations at issue] set forth the requirements *and industry standards* for motor carriers with regard to driver qualifications, vehicle maintenance, cargo securement, as well as the parts and accessories necessary for safe operation." (emphasis added)). As such testimony is obviously and routinely allowed, the motion is DENIED.

### E.  Motion to Exclude Rudolf G. Mortimer (Docket No. 421)

Defendants intend to call Rudolf Mortimer to testify regarding human factors that might have been involved in the decedent's accident. Plaintiffs object, principally because, in his report, Mortimer relies in part on the conclusions and opinions of other expert witnesses. Docket No. 421, at 8–9. In essence, Mortimer takes some conclusions from other experts regarding the circumstances of the accident, and using those conclusions

as a basis, opines on whether, had she been paying attention, the decedent would have had time to avoid the crash. *See* Docket No. 421-1, at 2–3. His conclusions in this regard are largely based on published research. *See id*. For that reason, I reject entirely Plaintiffs' intimation that Mortimer's conclusions would not be helpful to the jury or are mere parroting of other experts' work. As with the testimony of Dr. Bowles, Mortimer's proposed testimony is a useful and helpful extension of other experts' work.

As to the whether Mortimer may rely, in forming his opinions, on the conclusions of others, it is likely that he may permissibly do so, but the record before me does not allow me to answer the question definitively. Pursuant to Federal Rule of Evidence 703, an expert may base his opinion on the types of information that an expert in his field "would reasonably rely on." And, as the First Circuit has noted, "[e]xperts who testify regularly in court commonly and permissibly rely in some measure on information gathered by other experts." *United States v. McGhee*, 627 F.3d 454, 460 (1st Cir. 2010), *rev'd on reh'g on other grounds*, 651 F.3d 153 (1st Cir. 2011). Though it seems likely that experts like Mortimer, who focus on a rather narrow question regarding accident reconstruction, would

typically rely on the work of other experts, I will reserve judgment on that question, and the parties will be permitted to conduct a brief voir dire of Mortimer on this matter. The motion is accordingly DENIED WITHOUT PREJUDICE.[6]

### F.   Motion to Exclude Peter A. Murphy (Docket No. 422)

Murphy will be called to testify about traffic control devices, and specifically about whether the Municipality of San Juan, in parking its truck as it did, complied with the 2009 Manual on Uniform Traffic Control Devices ("MUTCD"). According to Plaintiffs, this testimony is improper because Murphy fails to "establish that the December 2009 MUTCD was in operation in Puerto Rico on the date of the accident"—and that, indeed, it was not adopted by Puerto Rico until somewhat later. Docket No. 422, at 8–9. It is hard to take Plaintiffs' argument seriously in this regard, given that it has

---

**6.**  That said, I DENY the motion WITH PREJUDICE insofar as it argues that Mortimer's testimony must be stricken because, in reaching his conclusions, he has "cherry picked" evidence that favors Defendants. Docket No. 421, at 9. Apart from the opinions of other experts, on which I have reserved ruling, the evidence on which Mortimer relies satisfies Rule 703, and his choosing among it in rendering his report does not invade the jury's province. Of course, neither Mortimer nor any other witness can testify about whether he believes or disbelieves the factual testimony of other witnesses, but I am sure he will not.

also argued that Defendants cannot present evidence that they *did* comply with federal regulations. *See* Docket No. 420. Reading Murphy's report, it is plain that he will testify that—adopted or not[7]—the 2009 MUTCD represents the proper standard of care that the Municipality should have followed, and, further, that the Municipality failed to follow it. Such testimony is entirely appropriate.[8] *Cf. Boston & M.R.R. v. Talbert*, 360 F.2d 286, 290 (1st Cir. 1966) (recognizing that "nationally recognized standards were properly admissible as one more piece of evidence upon which the jury could decide" the standard of care); *Considine v. City of Waterbury*, 905 A.2d

---

**7.** Defendants point out that a Municipal witness, J. Santiago-Martínez, testified that he was familiar with the MUTCD (if not its content), and that if the Municipal workers failed to follow it during the crash, they might not have done their job correctly. *See* Docket No. 435-3, at 1–4. There is at least a colorable evidentiary basis for thinking that the Municipality *was* following or attempting to follow the MUTCD at the time of the crash, even if Puerto Rico had not formally adopted it. I also note that the MUTCD is, by law, "the national standard for all traffic control devices installed on any street, highway, or bicycle trail open to public travel." 23 C.F.R. § 655.603(a).

**8.** Notably, the report of Plaintiffs' design expert, Perry Ponder, also discusses the applicability of MUTCD, *see* Docket No. 405-1, at 3–4, though, as Plaintiffs point out, he was not specific about the version to which he was referring, *see* Docket No. 455, at 3.

70, 91 (Conn. 2006) (noting that regulations could be useful evidence of standard of care, even if they were not in effect at the time of an accident (following *Curtis v. District of Columbia*, 363 F.2d 973 (D.C. Cir. 1966))).

Plaintiffs also challenge Murphy's qualifications, arguing that he has "no knowledge, skill, experience, training, or education" in traffic control devices. Docket No. 422, at 12; *see also id.* at 14 ("Mr. Murphy's education, training and experience show that he has no background in Traffic Control Devices."). According to Plaintiffs, Murphy's background is solely in accident reconstruction. *Id.* at 14. Plaintiffs badly misrepresent Murphy's CV, which, most notably, states that he has over 15,000 hours "installing and maintaining worksite traffic control systems." Docket No. 422-2. at 1. Further, he has attended numerous traffic safety and traffic control seminars and trainings over several decades, and he has lectured on traffic control, especially in work zones. Plaintiffs' misleading objections to Murphy's expertise are therefore rejected, and the motion is DENIED.

### G.  Motion to Exclude Michael A. Sutton (Docket No. 423)

Plaintiffs' first reason for excluding Michael A. Sutton, who Defendants proffer as an accident reconstruction expert, is that

in his report, he makes credibility assessments of witnesses by, for example, crediting deposition testimony stating that the decedent would have been able to see the stopped work truck on her downhill approach. Docket No. 423, at 9–10. This argument is easily dismissed. Pursuant to Rule 703, an expert may of course rely on deposition testimony in reaching his conclusions. *See, e.g., Chavez v. Marten Transp., Ltd.*, Civ. No. 10-0004, 2012 WL 988011, at *2 (D.N.M. March 22, 2012) (collecting cases standing for the proposition that accident reconstruction experts routinely rely on deposition testimony in forming their opinions (citing *Miles v. Gen. Motors Corp.*, 262 F.3d 720, 724 (8th Cir. 2001))). If Plaintiffs are challenging the truth of the deposition testimony on which Sutton relied, their challenge is "to the credibility of [his] testimony, not the admissibility." *Larson v. Kempker*, 414 F.3d 936, 941 (8th Cir. 2005) (quotations and citations omitted); *see also Morales v. Monagas*, 723 F. Supp. 2d 411, 416 (D.P.R. 2010) (same). Plaintiffs' challenge thus fails on this ground.

Plaintiffs next object to Sutton's finding that a "differently designed underride guard would not have changed the outcome of this accident." Docket No. 423-1, at 7. Plaintiffs admit that Rule 704 generally permits Sutton to reach a

conclusion as to an ultimate issue. Nonetheless, they assert without argumentation that this particular conclusion "grossly overreaches and merely tells the Jury what result to reach." First, this argument is rejected because it is undeveloped. But it fails on the merits too: the rest of the paragraph from which the objected-to sentence comes provides a strong factual and scientific basis for the conclusion. *See* Docket No. 423-1, at 7–8. The same is true of Plaintiffs' objection to Sutton's conclusion that the rear guard "did not cause or contribute to [the] severity of the accident," which conclusion is based on the speed and angle of collision. *Id.* at 8. Plaintiffs motion is rejected on these grounds as well.

   Next, Plaintiffs object to Sutton's finding that had the decedent impacted a "shadow vehicle equipped with a truck mounted attenuator," the outcome would likely be different because she would "have collided with a cushion device that was capable of safely managing vehicle collisions at speeds much higher than those in this accident." *Id.* at 8. Plaintiffs call this opinion "rank speculation," but I can't understand why. All the opinion seems to be saying is that a different—and less dangerous—result would have obtained had the decedent hit a device—a truck mounted attenuator—that all of the relevant

experts know is designed to absorb collision impacts. This is a fairly unremarkable conclusion, and one Sutton seems qualified to make. Further, Sutton's deposition testimony shows that the conclusion was based on crash test data and regulations regarding how attenuators must function. *See, e.g.*, Docket No. 423-2, at 48. Plaintiffs' arguments are rejected in this regard as well.

Finally, Plaintiffs object to Sutton's statement that the decedent's injuries "were cause in this accident by truck body intrusion and not as a result of occupant dynamics." Docket No. 423-1, at 8. According to Plaintiffs, this constitutes "rank speculation" because Sutton "is not an expert in bio-mechanics." Docket No. 423, at 13. To be sure, Sutton should not venture to give testimony about body dynamics unless he is qualified as an expert in this field, but that does not make this statement speculative. To the contrary, given the particularities of this crash, even a layperson could determine that the decedent died on account of "truck body intrusion."

Plaintiffs' Motion is DENIED.

### H. Motion to Exclude Andrew C. Latimer (Docket No. 424)

Andrew Latimer will be proffered as an expert in the design and engineering of underride guards. Plaintiffs first object to his testimony that Defendants complied with certain federal regulations. This argument is rejected for the same reason it was rejected with respect to Morgan: compliance with the applicable regulation may not be dispositive, but it is probative.

Plaintiffs also object to Latimer's opinion that the underride guard was properly installed, "revealing no visible signs of workmanship or installation defects." Docket No. 424-1, at 6. Plaintiffs say this is problematic because the overriding issue here is design, not deficiency. More hyperbolically, they say that Latimer "mischaracterizes the critical issue" and thereby "overreaches and merely tells the jury what conclusion they should reach." Docket No. 424, at 12. To be sure, the issue in this case is design. Nonetheless, Latimer's proffered testimony regarding installation and workmanship is useful as a foundation to his conclusion that the guard in this case performed as it should. As such, Latimer's statement is relevant. Further, nothing in the paragraph on workmanship "tells the jury what

conclusion they should reach"; by suggesting otherwise, it is Plaintiffs who "mischaracterize[]" the relevant issue.

Plaintiffs next object to Latimer's statement that at the time the guard was installed, full-width underride guards were "either extremely rare or nonexistent in practice on similar dump bodies." Docket No. 424, at 13. This statement plainly foreshadows Latimer's testimony regarding the relevant standard of care. And as they have done with Defendants' other experts, Plaintiffs object to this standard-of-care testimony because "the Jury is allowed to conclude that (despite the rarity of full-width underride guards) failure to provide one is a breach of defendants' duty." *Id.* This argument is still misguided, as Defendants—like Plaintiffs—*must* present evidence about the standard of care, even if the jury is not obligated to agree. The argument fails.[9]

Finally, Plaintiffs object to Latimer's opinion that a full-width rear guard "would interfere more often with terrain or debris" than the one designed by Defendants, a fact that would

---

**9.** I also reject Plaintiffs' argument that Latimer's statement regarding the scarcity of full-width underride guards in 2002 is "speculative." Docket No. 424, at 14. Latimer's CV shows that he has been active in this particular field for 21 years; he would therefore have personal knowledge of what the general practice was in 2002.

"render[] a full-width rear guard impractical." Docket No. 424-1, at 9. Latimer's opinion is supported *in part* by his observation that the original guard on the truck involved in this suit showed visible damage suggesting that it "had already been damaged by contact with uneven terrain or debris." *Id.* According to Plaintiffs, this supposition is "rank speculation." Docket No. 424, at 15. In fact, the supposition is a combination of common sense and industry-specific knowledge. Latimer—who has been in the industry for more than 20 years—first notes that dump trucks often "operate in varied conditions," including those "with uneven terrain, piles of depris and other obstacles." Docket No. 424-1, at 9. Latimer further states that Defendants' rear guard is designed so as to help accommodate use of the dump body in such areas. *Id.* In explaining why a full-width guard would be less convenient in this regard, he then notes that even the narrower original guard had damage, and he makes the inferential leap that this damage was caused by uneven terrain. Of course, he can not say with certainty that such terrain damaged the guard, but given his experience and common sense, he can make a reasonable inference as to the cause of that damage. The motion is DENIED.

## II.  Defendants' Motions

### A.  Motion to Exclude Perry Ponder (Docket No. 405)

Defendants seek to exclude Plaintiffs' design expert, Perry Ponder. Defendants make numerous objections to Ponder's report, most of which boil down to complaints that he did not perform specific tests or calculations in the course of his analysis. As Plaintiffs point out, however, Defendants do not show that these specific tests must have been carried out to provide a foundation for Ponder's opinions. I have reviewed Ponder's report, and its conclusions are well-explained, and its use of crash-test data appears appropriate. To the extent that Defendants argue that Ponder should be excluded because his report does not establish that Defendants' guard was the proximate cause of the crash, such a problem, if it existed, would go to whether Plaintiffs can prove their case, not to whether Ponder's testimony is admissible. Defendants' motion is DENIED.

### B.  Motion to Exclude Reference to Decedent's Minor Son (Docket No. 406)

This motion is denied. It is true that the decedent's minor son is not a party to this case, and it is also true that, despite that fact, constant reminders of the fact that he lost his mother

might improperly influence the jury to compensate Plaintiffs for the minor son's loss. Still, Plaintiffs have a legitimate claim to damages arising out of the fact that the decedent was a mother at the time of her death, at least insofar as that fact has affected Plaintiffs themselves. Plaintiffs may therefore testify about how the decedent's death affected them in this regard. They may not, however, dwell on the minor son's own losses, as those have already been compensated and are no longer before this Court. Further, Plaintiffs' counsel are forewarned against heavy-handed solicitations of sympathy for the minor son; frequent mentions on their part *will* lead to a more restrictive order from the Court on this matter.

## C. Motion for Negative Inference Based on Spoliation (Docket No. 407)

Defendants intend to present evidence from an eyewitness that, after the crash, he saw the decedent's phone lit up and apparently on an active call. The phone itself, however, now lacks its SIM card and has water damage, and so Defendants' expert was unable to recover any information about what the phone might have been doing at the time of the accident. Defendants intimate that the SIM card was misplaced and the phone broken on purpose, so as to hide adverse evidence, and

they ask for a spoliation instruction. The prejudice Defendants claim from the loss of this evidence is "the opportunity to discover[] whether the decedent placed or received any telephone calls or text messages in the moments prior to impact." Docket No. 407, at 12. What Defendants neglect to mention is that they subpoenaed the decedent's mobile phone records from AT&T, and they therefore do have a record of the decedent's calls and texts. *See* Docket No. 442-2. Further, by failing to mention the AT&T records, Defendants forfeited their opportunity to explain why the AT&T records do not suffice to mitigate their spoliation concerns. The motion is DENIED.

### D. Motion to Limit Opinions of Dr. Mariusz Ziejewski (Docket No. 408)

Plaintiffs proffer Dr. Mariusz Ziejewski as an expert in the field of biomechanics. According to his report, his testimony regards analysis of whether and how accidents would cause various injuries. Docket No. 408-3, at 3. In essence, Dr. Ziejewski will testify that in a crash without truck body intrusion, the decedent would have survived with only minor or moderate injuries. *See id.* at 11. Plaintiffs object to several statements Dr. Ziejewski made during his deposition, which they say deliver opinions outside the scope of Dr. Ziejewski's report (specifi-

cally, that he testifies that the underride guard was defective and he "crosse[s] into the realm of accident reconstruction"). Docket No. 408, at 3.

Defendants' concerns are mostly misplaced. They identify five times that Dr. Ziejewski supposedly offered testimony on the underride being defective, all of which I have reviewed. The first of these is merely an explanation of the biomechanics of an impact with Plaintiffs' redesigned underride guard. *See* Docket No. 408-4, at 4:14–24. In the second, he explains that in his calculations he makes an assumption that, with the redesigned guard, there is no intrusion. *See id.* at 5:10–6:3. Likewise, the third is simply a description, in biomechanical terms, of the decedent's cause of death. *See id.* at 10:8–11:9. None of these are problematic, as they do not purport to render an opinion as to the underride guard as such. The fourth instance, however, is different. There, Dr. Ziejewski does opine that there was substandard design, and this is improper. *See id.* at 18:8–19:11. Though Plaintiffs argue he has the proper qualifications to testify as to the substandard nature of the rear guard, Dr. Ziejewski's report does not support any opinions as to design. He is therefore prohibited from offering any opinions as to the guards themselves. *See also id.* at 21:3–24.

As for Defendants' argument that Dr. Ziejewski engages in accident reconstruction, the first instance they cite is in actuality a benign instance of stating how he understands—from other evidence—the accident to have taken place. *See id.* at 13:22–14:3. As for the final instance Defendants point to, it is in no way "accident reconstruction"; to the contrary, it is Dr. Ziejewski stating, in response to a question, whether he believes "main frame rails are part of the protection devices for an occupant of a vehicle." *Id.* at 17:3–11. This seems to go to Dr. Ziejewski's area of expertise.

The motion is DENIED IN PART AND GRANTED IN PART. Plaintiffs are ORDERED to ensure that Dr. Ziejewski's opinion testimony is consistent with the above.

### E. Motion to Preclude Plaintiffs' Counsel and Experts from Referencing 49 C.F.R. § 393.86(a) (Docket No. 409)

Minimum standards for certain underride guards are set by federal law in 49 C.F.R. § 393.86. Subdivision (b) sets the standard for vehicles like the truck involved in this case. This is the standard that Plaintiffs have strenuously objected to Defendants' experts mentioning in the course of this case. Subdivision (a), by contrast, sets forth a more stringent

standard that does not legally apply in this case. But its legal inapplicability notwithstanding, I agree with Plaintiffs that discussion of the competing standards may be useful to the jury in considering what the standard of care was in this case. Accordingly, the motion is DENIED. *Cf. Hassan v. Stafford*, 472 F.2d 88, 94 (3d Cir. 1973) ("The modern trend in federal and state courts appears to favor the admission of regulations as evidence of standard of care, even where the regulations do not apply with the force of law to the individual defendant."); *Girdler v. United States*, 923 F. Supp. 2d 168, 188 (D.D.C. 2013) (similar).

**F. Motion to Exclude Duplicative Testimony on Mental Anguish (Docket No. 410)**

Plaintiffs intend to call their treating psychologist, Dr. Magda Arroyo, as well as an expert in psychiatry, Dr. Jorge Suria-Colón. Defendants argue that this testimony will be duplicative, and Plaintiffs disagree, arguing that Dr. Arroyo will testify about her treatment of Plaintiffs, while Dr. Suria will presumably testify more globally about their mental states. It is common in this district for Plaintiffs to present both their treating and expert physicians, and I will not strike either of their testimonies. However, Plaintiffs should be careful not to

waste the jury's and this Court's time by going over the same material twice. Dr. Arroyo's testimony should hew to her intervention and treatment, while the rendering of opinions as to Plaintiffs' mental suffering should be handled by Dr. Suria. With this guidance, the motion is DENIED.

### G. Motion to Prohibit Plaintiffs' Experts from Parroting the Opinions of Other Experts (Docket No. 411)

In substance, Defendants' motion mirrors the one Plaintiffs filed with respect to Rudolph Mortimer. *See* Docket No. 421. In it, Defendants cite several instances where, during deposition testimony, Plaintiffs' experts admit to using other experts' findings as starting points in their analyses; in each case, the testifying expert disclaims personal knowledge of the truth of the other expert's conclusion. *See* Docket No. 411, at 3–5. Defendants' motion is DENIED with the same caveat as Plaintiffs' motion was denied with respect to Mortimer: no expert, for either party, can vouch for the truth of another expert's conclusions (unless of course he or she personally has the expertise and data necessary to do so); an expert *may*, however, utilize another expert's findings if the typical expert in his field would do so. Defendants may request a brief voir dire on this point, but as noted above the Court views these

challenges with skepticism.[10]

## H.  Motion to Exclude Post-Accident and Autopsy Photos (Docket No. 412)

Defendants seek to exclude any post-mortem photos of the decedent on the groudns that the prejudice they would cause would substantially outweigh their probative value. Fed. R. Evid. 403. More to the point, Defendants argue that cause of death is not in dispute in this case, and that the photos would cause prejudice against Defendants as well as influence the jury to in effect award Plaintiffs' for the decedent's suffering. Plaintiffs respond by pointing out that they only seek to admit three photographs, which they argue are crucial to showing that the decedent very nearly avoided death, as they show the head wound she suffered was near her left temple.

As Defendants argue, the cause of her death—as well as the location of the impact—could be proved in other ways,

---

**10.**  What I mean is that this is a complex case, and the syllogistic chain that will allow either party to prevail requires expert opinions at many points. Thus, for example, an accident reconstruction expert's conclusions are the raw material necessary for a biodynamic expert's conclusions. It is thus difficult to take seriously—that is, as anything more than gamesmanship—either party's occasional insistence that an opposing expert cannot rely on another expert's work if he could not himself replicate it.

including by Plaintiffs' expert pathologist and the autopsy report. Still, the photos are surprisingly compelling evidence of just how close the decedent came to avoiding disaster, and that fact may be probative of Plaintiffs' claim. That said, the second and third of the three photos Plaintiffs attached to their opposition are gruesome and emotionally evocative. I fear that showing either of them—and especially the third, which shows the decedent's un-bandaged wounds—would lead to the jury responding with emotion, not reason. Moreover, neither of the two full-face photographs are more probative than the first, which shows only the portion of the decedent's face above the mouth. The first photograph, moreover, is far less likely to prejudice Defendants.

Accordingly, I GRANT IN PART AND DENY IN PART Defendants' motion. I find that Plaintiffs may present the first photograph attached to their motion, which shows the decedent's head above the mouth. I find, however, that the prejudice that the other two photos would create substantially outweighs their probative value, and I exclude them. *Cf.* *Johnson v. Rankin*, 547 F. App'x 263, 270 (4th Cir. 2013) (recognizing "that autopsy photos are highly prejudicial" and affirming their exclusion, despite the fact that they had some

probative value); *Bridges v. Enterprise Prods. Co.*, Civ. No. 05-786, 2007 WL 571074, at *2 (S.D. Miss. Feb. 20, 2007) (excluding autopsy photos in a wreck-related case where cause of death was not disputed).

## III.    Conclusion

For the reasons stated above, the motions in limine at Docket Nos. 405, 406, 407, 409, 410, 411,  417, 419, 420, 421, 422, 423, and 424 are DENIED; the motion at Docket No. 418 is GRANTED; and the motions at Docket Nos. 408 and 412 are GRANTED IN PART AND DENIED IN PART. At the beginning of trial on the morning of February 2, 2015, Plaintiffs will moreover be expected to SHOW CAUSE why sanctions should be imposed upon them or their counsel.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 1st day of February, 2015.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE